# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

**RICHARD'S DISPOSAL, INC.,**
                              **Plaintiff,**

**VERSUS**

**CITY OF JACKSON, MISSISSIPPI,**

                   **Defendant.**

**Civil action No. 3:22-CV-396-KHJ-MTP**

---

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S
### MOTION FOR SUMMARY JUDGMENT

---

 **COMES NOW** Richard's Disposal, Inc., Plaintiff, by and through its attorneys, and files Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment. In support thereof, Plaintiff shows the following:

 **Issue Presented**

 It is undisputed that Defendant, City of Jackson, Mississippi ("COJ"), executed an emergency agreement with Plaintiff, Richard's Disposal, Inc. ("RDI"), for the performance of residential solid waste collection services for the COJ. It is also undisputed that the COJ subsequently issued RDI a notice to proceed and instructed RDI to begin providing waste collection services on April 1, 2022. RDI has continued to provide the requested solid waste collection services for the COJ for over six (6) months in good faith and according to (i) the COJ's Notice to Proceed, (ii) directions of the Mayor of the COJ, and (iii) the administrative officers and directors of COJ. RDI had no control of, participation in, or actual knowledge of any error or failure of the COJ in contracting with RDI for emergency waste collection services, if any such failure exists. Moreover, COJ nor any party acting on behalf of COJ informed or instructed RDI

that it should stop providing the requested critical services. Despite submitting several amicable demands to the COJ for payment for the services performed, RDI has received zero compensation from the COJ.

Can the COJ request and accept the garbage collection services rendered by RDI for over six (6) months, fail to ever stop RDI from performing those services had it desired to do so, and now simply refuse to pay RDI the fair market value of those services which were provided to the COJ in good faith?

## I.        Factual and Procedural Background

On February 17, 2022, COJ and RDI executed an Emergency Agreement wherein COJ contracted with RDI to collect waste for one year covering April 1, 2022, through March 31, 2023. (Exhibit 1, Affidavit of Alvin Richard, Jr., and Doc. No. 1-3). This was done pursuant to the "Mayoral Proclamation of Local Emergency City of Jackson, Mississippi," authorized by Miss. Code Ann. § 33-15-5(d), declaring a local emergency for the COJ based on the then-impending March 31, 2022, expiration of the existing emergency contract for collecting residential solid waste. (Doc. No. 1-1). On February 24, 2022, the COJ's Mayor ("Mayor") sent RDI a Notice to Proceed with the solid waste services effective April 1, 2022. He requested RDI to execute and return the Notice to Proceed. (Exhibit 1 and Doc. No. 1-4). RDI executed and returned the same to the COJ on February 25, 2022, per its request. (Exhibit 1). Afterward, RDI expended considerable funds and other resources to prepare for the emergency garbage collection services requested by the COJ and pursuant to the Notice to Proceed. (Exhibit 1).

Meanwhile, on March 9, 2022, the Mayor filed suit in the Chancery Court of the First Judicial District of Hinds County, Mississippi (No. 22-cv-00281), seeking a declaratory judgment regarding the respective rights and authority of the Mayor and City Council.  On March 31, 2022,

Judge Jesse Dickinson, the Special Chancellor appointed in the case, entered an Opinion and Judgement, finding that only the Mayor may select and negotiate with a vendor for a solid waste disposal contract, and the Council must appropriately approve the contract. Further, he added a "footnote 3" that stated, "there does exist the possible exception not presented in this case thus far, where the Council rejects an emergency contract presented by the Mayor, the Mayor vetoes the rejection under Miss. Code Ann. Section 21-8-17(2), and the Council overrides the veto. The Mayor then would have the option of engaging the judicial system, claiming the Council was arbitrary and capricious in overriding the veto." Judge Dickinson's Opinion and Judgement is attached hereto as Exhibit "2."

The Mayor of the COJ followed up with RDI on April 1, 2022, *via* telephone to confirm RDI's intentions to begin the residential waste collections services that same day. Following that call, the Mayor subsequently issued written correspondence to RDI reaffirming the February 24, 2022 Notice to Proceed and directing RDI to commence emergency solid waste collection services for the COJ beginning that day, April 1, 2022. (Exhibit 1 and Doc. No. 1-5). The Mayor of COJ also presented the COJ City Council ("City Council") with an Order Ratifying An Emergency Solid Waste Collection and Hauling Agreement with RDI for approval. (Doc. No. 1-6). The City Council disapproved the Order as presented by the Mayor. *Id.* Thereafter, on April 1, 2022, the Mayor delivered to the Clerk of the Council his written objection ("Veto") to the Council's disapproval of ratifying the Emergency Agreement with RDI. (Doc. No. 1-7). Later on April 1, 2022, Judge Dickinson amended his Opinion and Judgement, withdrawing his footnote 3, stating: "While the court is persuaded that a council vote to reject a contract is 'an official action of the council' and, therefore, an 'ordinance' as defined in Section 21-8-47, the question remains whether a vote to reject a contract submitted by a mayor is an ordinance that has been 'adopted' by the

council."   Judge Dickinson's amendment to his Opinion and Judgement (Exhibit "3," Order Vacating the Court March 31, 2022 Opinion and Judgement and Substituting This Opinion and Judgement).

The City Council did not override the Mayor's Veto. Instead, on April 14, 2022, the Council filed a pleading in the Circuit Court of the First Judicial District of Hinds County, Mississippi (No. 25CI1:22-cv-00194-EFP) entitled *First Amended Answer and Affirmative Defenses of the City Council of Jackson, Mississippi to Emergency Complaint for Declaratory Judgment and Counter-Claim Against Plaintiff Mayor Lumumba for Declaratory, Equitable and Injunctive Relief.* (Doc. No. 1-8).   The *First Amended Answer and Affirmative Defenses and Counter-Claim* included a specific declaration that the City Council --

> recognizes the public health implications of garbage pickup during the duration of this matter and asks that the Mayor continue to provide for garbage pickup during this time of self-declared crisis.

Doc. 1-8, Paragraph 11.

On May 11, 2022, the City Council filed a *Complaint for Declaratory Judgment and Injunctive Relief against the Mayor of Jackson* in the Chancery Court of the First Judicial District of Hinds County, Mississippi (No. G2022-571 T/1). (Doc. No. 1-9). Again, the City Council stated that it –

> recognizes the public health implications of garbage pickup during the duration of this matter, and Plaintiff therefore asks that the status quo continue with regard to the provision of garbage pickup service during this time of self-declared crisis.

Doc. 1-9, Paragraph 17.

Next, on July 5, 2022, the Council filed two (2) separate pleadings explaining that the crucial issue in its *Complaint for Declaratory Judgment* was the veto authority of the Mayor and

not any particular contract. More specifically, in a *Response to the Mayor's Motion to Dismiss the Council's Complaint for Declaratory Judgment*, the Council explained that:

> the issues in this suit involve a substantial point of municipal law, that being whether a mayor can veto a negative action.

Exhibit "4" Paragraph 6.

In the other July 5, 2022 pleading *Response to Mayor's Motion for Summary Judgment*, the Council persisted with its position that:

> the precise issue before this Court is neither central to multiple, ten-month-old, affirmative votes and vetoes thereto, nor to any one particular council vote or mayoral veto; the issue is much larger effecting the City's governance.

(Exhibit "5," Section 1, Page 3).

The Mayor has taken the position that it is entirely within his power to veto the City Council's disapproval of an action. The City Council disagrees. That matter is currently pending at the Supreme Court of Mississippi. (Exhibit "7" Mississippi Supreme Court Docket Sheet: No. 2022-CA-00855-SCT). However, the City Council acknowledges and conveys in its pleadings and also during a hearing in the Chancery Court matter (No. G2022-571 T/L) its desire for the Mayor to continue to arrange for the necessary residential solid waste collection services for the residents of Jackson, Mississippi due to the public health implications of garbage pickup. (Doc. Nos. 1-8 and 1-9 and Exhibit "6" (Transcript of Proceedings). While accepting the benefits of the services that the Mayor arranged with RDI and asking that the services continue, the City Council refuses to pay for these essential services.

In sum, the outcome of the City and City Council's dispute is not controlling in this matter. On April 1, 2022, RDI began waste collections for the residents of COJ and has continued doing so to date. RDI has continued to provide solid waste collection services in good faith and according

to the Notice to Proceed, instructions received from the Mayor, and directives of the City Council to the Mayor to arrange for the garbage collection services. RDI submitted invoices for payment to the COJ on May 6, 2022, for services rendered from April 1, 2022, through April 30, 2022, and on June 2, 2022, for services rendered from May 1, 2022, through May 31, 2022. (Exhibit 1 and Doc. Nos. 1-10 and 1-11). Pursuant to Miss. Code Ann. § 21-39-9 and the COJ's AP Invoice Operational Policy (Doc. 1-12), the COJ presented RDI's May 6, 2022, invoice for payment by the COJ and entered it on the Claims Docket for approval of payment by the City Council (Doc. 1-13).

On May 24, 2022, the Claims Docket, which included RDI's claim totaling $808,035.00, was presented to the City Council for approval. The City Council removed RDI's submitted invoice from the Claims Docket and proceeded to approve seventy-one (71) other claims that appeared on the docket after RDI's claim. (Doc. Nos. 1-13 and 1-14). Doing so was in direct violation of Miss. Code Ann. § 21-39-9. Section 21-39-9 requires the COJ to pay claims in the order they are entered on the Claims Docket. Despite RDI's amicable demands, the COJ has failed to pay for the services it requested, accepted, and continues to accept.

Accordingly, on July 13, 2022, RDI filed suit against COJ, seeking payment for services rendered to the COJ for collecting residential solid waste. (Doc. No. 1). It is undisputed that the COJ's failure and refusal to pay have damaged RDI in the amount of at least $4,040,175.00 from April 1, 2022, up through and including August 31, 2022. The amount described above is based on RDI being due $808,035.00 per month, which the COJ in its Answer and Affirmative Defenses acknowledged is the fair market value of the services provided by RDI and agreed to by the COJ for April 1, 2022, up through and including August 31, 2022 (Doc. No. 10).

Acknowledging the present and pending dispute between the COJ and the City Council concerning the Mayor's authority to veto the City Council's disapproval of an action, RDI's demand for payment based on the fair market value of services provided in good faith is nevertheless warranted pursuant to Miss. Code Ann. § 31-7-57-(2). RDI has expended significant time and resources developing, preparing, delivering, and otherwise providing the COJ and its residents with essential solid waste collection services since April 1, 2022, with the expectation of receiving and COJ's promise to pay RDI the agreed-upon fair market value of RDI's services. (Exhibit 1). Because of RDI's services, the COJ has been able to fulfill its statutory duty to collect and dispose of the garbage of its residents and avoid the risk of disease, unsanitary conditions, and any threat to the health and welfare of the people of Jackson posed by uncollected garbage/solid waste. RDI conferred these benefits directly to the COJ and the residents of Jackson, Mississippi, with the COJ's express knowledge, authorization, and directions.

## II.     Law and Argument

### A.     Summary Judgment Standard

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Walker v. Williamson, 2017 U. S. Dist. LEXIS 312 13 (S. D. Miss, March 6, 2017). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson,* 477 U.S. at 256. Once RDI has met its burden, the COJ must come forward with facts to establish a genuine dispute regarding the applicability of Miss. Code Ann. § 31-7-57(2) obligating the COJ to pay RDI the fair market value for the services it has rendered. There is no express or implied requirement under Rule 56 that the moving party supports its motion with

affidavits or other similar materials *negating* the opponent's claim. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265. Summary judgment is mandated in any case where a party opponent fails to establish the existence of an element essential to the case and on which the party has the burden of proof. *Id.* at 322.

As shown by RDI's Motion for Summary Judgment, there is no genuine issue of material fact in dispute. And, whether there is a successful argument to be had concerning the underlying governmental details as to the ability of the COJ to issue an emergency contract to RDI with or without the City Council's approval, RDI is still entitled to be paid for the COJ-requested work it performed in good faith, in satisfaction of a necessary governmental duty to the citizens of the COJ. That is the issue before this Court and the subject of RDI's motion, not the validity of the Emergency Agreement.

**B.       RDI is entitled to summary judgment under Miss. Code Ann. Section 31-7-57**

This case is the very type of case contemplated by §31-7-57. By its explicit terms, § 31-7-57(2) creates a right of recovery for "any vendor who, in good faith . . . performs any services" for a governing authority for "an object authorized by law." More specifically, it grants an avenue of recovery for a good faith vendor who "' had no control of, participation in, or actual knowledge of the error or failure by the agency or governing authority"' to follow the law concerning a contract. *Warnock & Assocs., LLC v. City of Canton*, 328 So. 3d 1254, 1264, n. 6 (Miss. Ct. App. 2021).

**1.       RDI is a Vendor of Waste Collection Services**

The Chapter of the Mississippi Code containing Section 31-7-57(2) includes a definitional section. However, this Chapter does not define the term "vendor." "In interpreting statutory enactments, one of the fundamental rules of construction is that words shall be given 'their common and ordinary acceptance and meaning.' Miss. Code Ann. § 1-3-65."

*Bufkin v. State*, 867 So. 2d 285, 287 (¶8) (Miss. Ct. App. 2004). The ordinary meaning of "vendor" is "a seller of goods or services." Clearly, RDI qualifies as a "vendor" of waste collection services.

### 2.    RDI has Operated in Good Faith at all Times

The evidence clearly shows that RDI performed an essential service for COJ and its citizens as requested in good faith, even after its invoices were not paid. It is undisputed that the COJ asked for and received emergency waste collection services from RDI, for which RDI submitted invoices to the COJ for payment. It is also undisputed that the COJ presented RDI's invoice for payment on the Claims Docket. It is further undisputed that despite the COJ's continual acceptance of the services rendered by RDI, the COJ has failed to pay RDI for those services. Conversely, it is quintessentially bad faith for the COJ to continually deny RDI payment for services it has both requested, accepted, benefitted from, and continues to accept and benefit from RDI's services as of the date on which this motion was filed. RDI has continued to provide solid waste collection services in good faith and according to the Notice to Proceed issued by the COJ, instructions from the Mayor of the COJ, and communications from the City Council to the Mayor to continue to arrange for garbage pickup services.

### 3.    The Agreement was for an Object Authorized by Law

It is undisputed that waste collection service is a service that COJ is required by law to render to its citizens. Therefore, a contract for waste collection service is an object authorized by law.

### 4.    RDI had no Control Over, Participation In, or Actual Knowledge of an Error or Failure by the COJ

The last two (2) sentences of  § 31-7-57(2) read as follows regarding a "vendor" seeking compensation under § 31-7-57(2):

… the vendor had no control of, participation in, ***or*** actual knowledge of the error or failure by the agency or governing authority.

§ 31-7-57(2) (Emphasis Added)

The Mississippi Supreme Court ruled that "statutes written in the disjunctive set forth separate and distinct alternatives. *See In re Branan*, 419 So. 2d 145, 146 (Miss. 1982) ('The use of the disjunctive '"or"' denotes a choice between alternatives.')." Whitaker v. Limeco Corp., 32 So. 3d 429, 435 (¶15) (Miss. 2010). Therefore, RDI is only required to satisfy one (1) of the three (3) conditions in §31-7-57(2) to be a "Good Faith Vendor." Hence, RDI clearly meets the condition for payment of its invoices under § 31-7-57(2). (Exhibit 1, Paragraphs 15-21)

On the other hand, if §31-7-57(2) requires that the vendor had no control over, participation in, "***and***" actual knowledge of an error or failure by the COJ in contracting, RDI meets the last of the three (3) of these conditions. (Exhibit 1, Paragraphs 15-21) Here, RDI is not asserting the validity of the Emergency Agreement. Instead, RDI asserts that it was unaware that the Agreement was defective because the Mayor vetoed the City Council's action in rejecting the RDI Emergency Agreement. The City Council did not override the Mayor's veto. Whether the Mayor could veto a measure to disapprove a matter is not settled law in Mississippi. As recognized by Judge Dickinson, "a council vote to reject a contract is 'an official action of the council' and, therefore, an 'ordinance' as defined in Section 21-8-47." (Exhibit 3) Under Miss. Code Ann. Section 21-8-17, ordinances adopted by the City Council are subject to veto by the Mayor, as was done here for the City Council's rejection of the RDI Emergency Agreement.

Additionally, the Mississippi Attorney General has opined that "the mayor does not have the ultimate authority to bind the municipality to a contract. That authority lies with the city council, ***subject to the veto power of the mayor***." *(emphasis added)* MS AG Op. No. 2012-00013, 2012 Miss. AG LEXIS 18, *4. "A 'mayor's veto . . . is undeniably a part of the legislative

process.'" *Shanks*, 793 So. 2d at 579 (¶12) (quoting *Bryant v. Nichols*, 712 F. Supp. 887, 891 (M.D. Ala. 1989)). A mayor's veto is also an action that may be appealed under Mississippi Code Annotated section 11-51-75. *Shanks*, 793 So. 2d at 580 (¶15). The mayor's veto becomes 'final'— and the legislative process finally concludes—only when the municipal legislative body has had an opportunity to either accept or override the veto. *Id.* at 580-82 (¶¶17-24). Therefore, in this case, the initial vote of the Board of Aldermen to approve the Claims Docket was nothing more than an interlocutory step in the legislative process. Once the Mayor vetoed the Board's action, the Board's vote was legally ineffective and had no further legal significance." *Warnock & Assocs.,* 328 So. 3d at 1263. Hence, RDI did not know of an error or failure in the COJ's contract implementation based on the Mayor's Veto.

As previously noted, the COJ executed an Emergency Agreement with RDI requesting the commencement of garbage collection services on April 1, 2022, for the residents of Jackson, Mississippi. After that, the COJ issued RDI a Notice to Proceed, directing RDI to continue preparation to provide solid waste services for COJ, which were to commence on April 1, 2022. After the City Council failed to override the Mayor's Veto of its April 1, 2022, vote to disapprove the RDI Emergency Agreement, the COJ continued to request and instruct RDI to furnish waste collection services for COJ's residents. After the City Council failed to override the Mayor's veto, the City Council still instructed the Mayor to arrange for garbage collection services. The Mayor did arrange with RDI for garbage collection services. According to that arrangement, RDI performed services at the request of COJ and according to the terms and provisions previously used in its arrangement with Waste Management, Inc. for such emergency services. (Doc. Nos. 1-2 and 1-3). Pursuant to those same terms and conditions, RDI submitted invoices to the COJ for payment, and the COJ placed the invoice on the Claims Docket for payment. RDI reasonably relied

upon the affirmative action of COJ under the emergency arrangement coupled with the City Council's repeated directions to the Mayor concerning arranging for the emergency collection services. RDI was told to continue, not stop, collection services. Nor was it enjoined from providing such services for COJ residents.

In fact, the City Council withdrew the request in its May 11, 2022 Chancery Court Complaint in Cause No. 2022-571, seeking to enjoin "prospective action by the Mayor to effectuate a contract that he thinks he vetoed." (Doc.1-9 and Exhibit 6, Page 25 line 29 through Page 26 line 3). Subsequently, on July 8, 2022, during proceedings in Cause No. 2022-571 before the Special Chancellor, Larry E. Roberts, on the City Council's Complaint, the Court specifically inquired as follows:

> **THE COURT:** You included in your suit a request for injunctive relief under Rule 65. However, in paragraph 17 of your complaint, and I'll read it:
>
> "Plaintiff recognizes the public health implications of garbage pickup during the duration of this matter, and Plaintiff therefore asks that the status quo continue with regard to the provision of garbage pickup service during this time of self-declared crisis."
>
> **MR. SCANLON**: Well, Your Honor, first, I would like to respond by saying that with regard to the preliminary injunction, we essentially withdrew that request when we had a status conference telephonically with the Court because we knew we were going to have a hearing today to deal with all the merits.
>
> But to answer the Court's question about the status quo, the city council does not want to create a situation where people who live in Jackson -- and I'm one of them, so I'm glad that they feel this way -- are not being delivered the provision of garbage collection services.
>
> They are not saying with the status quo that they are picking any one particular vendor for one particular contract. I think that it's been misread as that and on social media and some other news outlets. They're simply saying they don't want to be viewed as -- even though they're bringing this very important legal question to the Court -- as putting the brakes on the provision of garbage collection services to its citizens. They are trying to have a legal question answered which is much, much larger than the question as to who should have the garbage contract.

This is going to affect governance inside the council chambers and in probably every municipality in Mississippi.

> **THE COURT:** What do you want specifically in an injunction? You're asking for a permanent injunction.

> **MR. SCANLON**: The relief that was sought by city council in the injunction was to prevent prospective action by the Mayor to effectuate a contract that he thinks he vetoed.

Exhibit 6, Page 24, line 16 through page 26, line 3.

The only knowledge imputed to RDI is that the City Council and the Mayor had different legal opinions regarding the validity of the emergency contract based on the Mayor's Veto of the City Council's disapproval of the contract. RDI still does not know which legal opinion is correct because the determination regarding the Mayor's and City Council's opinion is still pending at the Supreme Court of Mississippi under a case separate from this case and between different parties. Surely, knowledge of a difference of opinion between the City Council and the Mayor regarding a mayoral veto is insufficient to render RDI in bad faith under the statute in question.

In this action, RDI is not requesting the Court to decide the validity of a contract. Instead, RDI seeks a summary judgment ruling that the COJ is liable, as a matter of law, for the fair market value of the garbage collection services rendered by RDI for COJ as authorized by §31-7-57(2). The parties set the fair market value of RDI's services at $808,035.00 per month based on the COJ's prior experience procuring similar services. (Doc. 1-2).

### C.    RDI is entitled to summary judgment under the doctrine of quantum meruit

Even if the Supreme Court, in the pending matter between the COJ and the City Council of Jackson, Mississippi, finds that the Mayor, on behalf of the COJ, was not within his power to issue the emergency waste collection contract to RDI without the approval of the City Council,

RDI is still entitled to recover against the COJ. The equitable concept of quantum meruit is clearly

embodied in Miss. Code Ann. § 31-7-57(2).

A party "cannot claim benefits under a transaction or instrument and at the same time

repudiate its obligations." *Wood Naval Stores Exp. Ass'n v. Latimer,* 71 So.2d 425, 430 (Miss.

1954).  As the Supreme Court of Mississippi stated, a party in RDI's position must be paid for its

work:

> Quasi-contractual relief is really a type of restitution; it prevents unjust enrichment. It is not a suit on the contract at all but is a remedy implied in law. If there was originally a contract involved but it failed and the failure of the contract resulted in an unjust enrichment to either party, even the non-breaching party, the injured party may be able to recover damages under a quasi-contractual theory. Such contracts rest upon the equitable principle that a person shall not be allowed to enrich himself [or herself] unjustly at the expense of another. In Mississippi, "**When a contractor substantially performs the terms of the contract, substantial performance will support recovery either on the contract or on a *quantum meruit* basis**." (*emphasis added*).

> If there was no contract involved but one party has conferred a benefit on the other party with a reasonable expectation of being compensated, unjust enrichment would result if the defendant were allowed to retain the benefits without compensating the plaintiff. "Where the recovery is based on *quantum meruit,* the amount of recovery is limited to the monetary equivalent of the reasonable value of the services rendered…"

*Waste Mgmt. of Miss v. Jackson Ramelli Waste LLC,* 301 So.3d 635, 641 (¶29) (Miss. 2020)

Here, it is undisputed and admitted that the COJ requested and executed an Agreement

with RDI to perform emergency waste collection services. (Exhibit 1 and Doc. Nos. 1-3 and 10).

The COJ then received and accepted RDI's services under the emergency contract in question.

Neither the COJ nor any other governmental entity at any point has sought to enjoin/stop the

emergency waste collection services being performed by RDI. As a result, RDI is entitled to pursue

*quantum meruit* recovery under the prevailing Mississippi jurisprudence on this issue and under

Miss. Code Ann. § 31-7-57(2). That section provides in part that:

> That any vendor who, in good faith, delivers commodities or printing or performs any services under contract to or for the agency or governing authority, **shall** be entitled to recover the fair market value of such commodities, printing or services, notwithstanding some error or failure by the agency or governing authority to follow the law, if the contract was for an object authorized by law and the vendor had no control of, or participation in, or actual knowledge of the error or failure by the agency or governing authority.

This statute is commonly referred to as the "good faith vendor" statute and provides a remedy for

quantum meruit for services rendered. *See, e.g., MS Ag. Op. Brock,* 2019 WL 7820651, November

8, 2019.

     The COJ's legal obligation to pay for services is not solely dependent on the existence and

enforceability of a written contract. As the United States Supreme Court noted in 1877, the law

also recognizes a claim based upon an implied contract for quantum meruit. *Clark v. United States,*

95 U.S. 539 (1877). Even in situations where the written contract is rescinded or voided, or

unenforceable for some reason, the contract price for the services at issue is a relevant

consideration in assessing reasonable value. *See Walker v. Williamson,* 2017 WL 888223 (S.D.

Miss. March 6, 2017) (even where a contract is unenforceable, the value thereof is set by the

contract price); *Williams v. Ellis,* 176 So.3d 133 (Miss. Ct. App. 2015) (although the contract was

rescinded, the contract price was still used to establish the value of services). Thus, whether RDI's

claim is premised on a written contract or quantum meruit, the underlying facts are the same as is

the central issue – the reasonable value of services performed.

     Under Mississippi law, *quantum meruit* is an equitable doctrine that affords relief where,

as here, an express contract could possibly be found to be void for some reason. *See Ground*

*Control, LLC v. Capsco Indus., Inc.,* 214 So.3d 232, 246 (Miss. 2017) (*Ground Control II*). Again,

Mississippi jurisprudence has clearly established that the equitable doctrine of *quantum meruit* ensures that no one who benefits by the labor and materials of another should be unjustly enriched thereby. *Reed v. Weathers Refrigeration and Air Conditioning, Inc*., 759 So.2d 521, 525 (Miss. Ct. App. 2000).   In such situations, the law implies a promise to pay a reasonable amount for services performed "even absent a specific contract therefor." *Id. See also Ace Pipe Cleaning, Inc. v. Hemphill Constr. Co., 134 So. 3d 799 (Miss. Ct. App. 2014)*.

In *Ground Control, LLC v. Capso Indus., Inc.,* 120 So.3d 365, 368 (Miss. 2013) (*Ground Control I*), the trial court ruled that a subcontractor's written contract was void for failure to obtain a certificate of authority as required by statute. However, the Mississippi Supreme Court expressly held that this ruling, although legally correct, did not preclude the subcontractor from pursuing equitable relief even if the Agreement was not enforceable.

### D.    Unjust Enrichment

Where there is no contract or a dispute as to the existence or enforceability of the contract, a party may plead unjust enrichment. Therefore, RDI is also entitled to recover under the doctrine of unjust enrichment.

> The doctrine of unjust enrichment is based on a promise, implied in law, "that one will pay a person what he is entitled to according to 'equity and good conscience.'" *1704 21st Ave., Ltd. v. City of Gulfport*, 988 So. 2d 412, 416 (Miss. Ct. App. 2008). To prevent unjust enrichment, the law creates a quasi-contract based upon "the equitable principle 'that a person shall not be allowed to enrich himself unjustly at the expense of another.'" *Id*.; *Koval v. Koval*, 576 So. 2d 134, 137 (Miss. 1991) (citation omitted). Unjust enrichment is only available where there is no legal contract. *Powell v. Campbell*, 912 So. 2d 978, 982 (¶14) (Miss. 2005). Additionally, this Court has recognized that unjust enrichment is considered to be a remedy, rather than an independent theory of recovery. *See Cole v. Chevron USA, Inc*., 554 F. Supp. 2d 655, 671 (S.D. Miss. 2007) (citing *Coleman v. Conseco, Inc*., 238 F. Supp. 2d 804, 813 (S.D. Miss. 2002)); *see also Estate of Johnson v. Adkins*, 513 So. 2d 922, 926 (Miss. 1987).

Mosley v. Geico Ins. Co., 2014 U.S. Dist. LEXIS 181651, *15-16 (S.D. Miss. December 16, 2014).

"'Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain.'" *King v. Baylor Univ.,* 2022 U.S. App. LEXIS 23649, *34 (5th Cir. August 23, 2022). Hence, the facts of this case call for RDI's recovery under the doctrine of unjust enrichment. COJ has been able to carry out its statutory duty concerning waste collection services due to the efforts of RDI, but COJ has withheld payment to RDI for such efforts. COJ has received the benefit of at least $4,040,175.00 ($808,035.00 per month) from RDI's services while failing to pay for such services.

**III.    Conclusion**

Based on the preceding, RDI respectfully submits that the Court should grant summary judgment in favor of RDI and against COJ, obligating the COJ to immediately pay RDI the fair market value of the services it has rendered and performed per the COJ's request and benefit of COJ.

> RESPECTFULLY SUBMITTED,
> **RICHARD'S DISPOSAL, INC.**
>
> By:*/s/ John L. Walker*
> JOHN L. WALKER (MSB #6883)
> GLORIA J. GREEN (MSB #4989)
> WALKER GROUP, PC
> 1410 LIVINGSTON RD., SUITE A
> P.O. BOX 22849
> JACKSON, MS 39225-2849
> (601) 948-4589 Office
> (601) 354-2507 Facsimile
> **ATTORNEYS FOR RICHARD'S**
> **DISPOSAL, INC.**

**Certificate of Service**

I certify that I have served a copy of the above and foregoing pleading via this Court's CM/ECF system to all counsel of record participating in the CM/ECF system on this 5th day of October 2022.

> */s/John L. Walker*
> John L. Walker